## ROBINSON v. CARBON STEEL CO.

(Circuit Court of Appeals, Second Circuit.  November 9, 1915.)

### No. 40.

CORPORATIONS ⬦⟹316—CONTRACT WITH OFFICER—VALIDITY.

    Evidence *held* insufficient to establish a valid oral contract between a corporation and its president that the latter should receive half the profits· of a contract made by the corporation by him as president; it not being shown that it was authorized or ratified by the board of directors, or even known to more than one of them.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1401, 1402, 1404–1406, 1408, 1409, 1412–1414; Dec. Dig. ⬦⟹316.]

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Elsie G. Robinson against the Carbon Steel Company.  Judgment of nonsuit, and plaintiff brings error.  Affirmed.

This cause comes here upon writ of error by the plaintiff to review a judgment of the District Court, Southern District of New York. The· plaintiff sues as assignee of. Frank B. Robinson under a certain contract alleged to have been entered into by Robinson with the defendant.  Recovery is sought for upwards of $110,000 unpaid balance of one-half of the profits arising out of certain contracts for the furnishing and erecting certain materials in the construction of what is known as the Manhattan Bridge in the city of New York.  At the close of plaintiff's case motion was made for nonsuit and the same 'was granted.·  This disposition of the case of course eliminated a set-off or counterclaim which was pleaded in the answer.

John C. Wait, of New York City (Thomas H. Keogh, of New York City, of counsel), for plaintiff in error.

Frank S. Gannon, Jr., and Royal E. T. Riggs, both of New York City (Royal E. T. Riggs, of New York City, of counsel), for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge.  From October, 1905, until 1911, Robinson was a director and from the early part of 1906 until 1911 he was president of the defendant corporation at a salary of $12,000 and later of $15,000 a year, and during all that period he was attending to the business of defendant.  On June 15, 1906, the city of New York entered into a contract for the erection of the bridge with the Ryan-Parker Construction Company.  On May 6, 1907, the latter company contracted in writing with defendant company for the wire cable work required.  Thereafter the defendant contracted in writing with John A. Roebling Sons & Co. for the supply of wire for the bridge and caused to be incorporated a subsidiary company known as the Glyndon Contracting Company for the purpose of erecting the cables; it also entered into a contract in writing with the last-named company for such erection.  All these contracts were signed for defendant com-

pany by Robinson as its president. They were all carried out, defendant received its payment from the Ryan-Parker Company, and out of the money thus received paid Roebling Sons and the Glyndon Company. Plaintiff contends that after such payments there remained with defendant a very large sum ($400,000), representing its profits under the Ryan contract of May 6, 1907. It is further contended that Robinson is entitled to one-half of these profits by virtue of an oral contract which, it is asserted, he made with the company of which he was president. The theory is that it was known by Robinson and Ryan that the proposed contract for the wire would be a profitable one, that Ryan was willing to give it to Robinson personally, that the latter was willing that the defendant should do the work and share the profits, and that it was agreed between the parties that, if Robinson would get the Ryan Company to enter into the written contract for steel wire with defendant Carbon Steel Company, the latter as compensation for his services in so doing would pay him one-half of any profits which it might make out of such contract.

We do not understand that even this plaintiff contends that a president of a corporation has any authority to bind the company to a secret agreement, known only to himself, whereby he is to share personally in the profits which his company may make out of a contract with a third party which the president has secured or is about to secure for it. The proposition is that the contract on which plaintiff relies was made with Robinson personally by John D. Slayback, who at the time was a director and the treasurer of defendant. The only witness to the making of such an agreement was Robinson himself. He testified:

"I told him [Slayback] that I could get the contract personally for the erection of the cables over the Manhattan Bridge and that I could place it possibly with the Roeblings or with some other concern, or I could do it myself; that Roebling would probably want all the profit, and I thought I could get somebody to do it for about one-third of the profit, and I probably could do it myself and make all the profit; that I was just coming back with the Carbon, and, being quite a stockholder, if he wanted an opportunity I would let the Carbon Steel Company do the work and share the profit, or I would let Roebling do it, or some other concern, or do it myself. He [Slayback] said he would be only too happy to do it if I could carry the deal through; that he was only too glad to accept it and would gladly give me half the profits."

At this interview Robinson, who was acting for himself, could not also represent the company, and Slayback, a single director and the treasurer, had no power, without authorization by the board of directors, to bind the company to any such agreement with its president. Of any such authorization prior to the conversation between Slayback and Robinson here is not a particle of evidence. Nor is there anything to show that the board of directors or executive committee ever expressly ratified such contract. The business of the company seems to have been conducted in a rather slipshod way, and there might be a fair argument that nonaction by the directors after they knew the facts might be taken as indicating ratification. But there is not sufficient proof on which to base this argument. The directors of defendant were:

In 1905–6: Kilduf, Hemphill, Brenner, Howland, Keith, McGrew, and Robinson.

In 1906–7: Robinson, J. D. Slayback, Wetmore, Silverthorne, Hemphill, E. F. Slayback, and M. S. Payne.

In 1907–8: Robinson, J. D. Slayback, Wetmore, E. F. Slayback, H. E. Payne, Buchanan, and Baldwin.

In 1908–9: Robinson, J. D. Slayback, E. F. Slayback, Alby, Buchanan, Fitzpatrick, and Baldwin.

There is no direct evidence that any of these had any knowledge of this agreement with the president to divide the profits earned on the steel wire contract with Ryan, except Robinson and J. D. Slayback. A number of checks drawn by the defendant to the order of Robinson for varying amounts and aggregating about $90,000 were put in evidence. These checks were all paid. But these were all signed by Robinson, president, and J. D. Slayback, treasurer, except one, which was signed by Buchanan, vice president. In the absence of further proof, the jury would not have been warranted in finding that the other directors, or even Buchanan, had knowledge that Robinson was drawing out of the treasury large amounts of money, in addition to his salary, as profits on a contract between defendant and the Ryan Company. There was a failure to show either authorization or ratification of the contract sued upon, and the trial judge properly refused to let the case go to the jury.

There was an exception to the refusal of the court to allow Ryan to testify to conversations he had with Robinson; the object being to show that Ryan was offering the option or privilege of taking the steel wire contract to Robinson personally. It is not necessary to consider this point. Robinson had testified that the option was offered personally to himself. Coming here, as the case does, after a nonsuit, this statement of Robinson must be taken as true, and Ryan's corroboration would add nothing to it.

Judgment affirmed.